WALTER DEWITT, appellee, v. HOMER DEWITT, appellant.

No. 52277.

December 13, 1966.

Crookham & Crookham, of Oskaloosa, for appellant.

Life, Davis & Life, of Oskaloosa, for appellee.

MOORE, J.—Plaintiff's petition, filed July 16, 1962, alleges he is the owner of a certain described farm in Adams Township, Mahaska County, immediately north of defendant's described farm and that defendant blocked and dammed the natural drainage from plaintiff's to defendant's land at the dividing fence line. He asks an injunction issue restraining such obstruction and compelling its removal.

The trial court on June 19, 1964, made these findings and conclusions:

"Findings of Fact. The parties, brothers, own adjoining tracts of farmland, plaintiff's lying north of defendant's. Elevation lines establish the natural flow of surface water from the north to south. Plaintiff acquired his land approximately 1949-50 while defendant acquired his land about 1945-6. Up until

plaintiff acquired his land there had been no partition fence between the two tracts. Prior to 1945-6 water (surface) seeped over from plaintiff's land onto defendant's land near an old well or deep depression at the fence line and out 2-3 rods to a swale which ran towards Middle Creek until about 150 feet north of said creek where elevation rose to the bank of the creek. The former owner of defendant's land maintained a ditch to drain the swale out to the creek. There is a tile from plaintiff's land out over defendant's land.

"Following plaintiff's purchase, the brothers erected a partition fence about 1950-2. Thereafter farming operations built up the fence line on defendant's land to such extent water (surface) no longer seeped over onto defendant's land and he ceased to maintain the ditch draining the swale. Heavy rains over the last few years have caused surface water to accumulate at the fence 6-8" deep on plaintiff's land and due to the higher fence line will not seep over onto defendant's land as it formerly did.

"After a heavy rain plaintiff dug three to four ditches on his land about 8" deep and 12" wide and three feet long at the fence line on his land where surface water normally discharged in the past. He further cut these same ditches through the fence line and out onto defendant's land some 3-5 feet thus releasing the accumulated surface water onto defendant's land and out into the swale. The defendant promptly filled the ditches on his side and has erected barriers in said ditches on his land. A family quarrel has resulted and plaintiff brought this action to enjoin defendant from blocking the flow of surface water.

"Defendant contends plaintiff has no right to drain surface water upon his land, and second that he has an adequate remedy at law under Chapter 465, Code of Iowa, 1962.

"Conclusions of Law. 1. In determining which of adjacent tracts is dominant, relative elevation and not general movement of floodwaters is controlling. Plaintiff's land is the dominant estate and defendant's land the servient estate.

"2. The servient estate is bound to take the natural flow of surface water from the dominant estate and has the right to conduct the water flowing upon his land into the channel provided by nature for the drainage of his land and through such

channel to cast it upon the servient or lower estate, unless the quantity of water thrown upon others' land is materially and unduly increased to his damage. There is no showing here that the quantity of water released is materially and unduly increased but is the same amount that would normally have seeped over on defendant's land except for the elevation barrier at the fence line created by defendant's farming method. The owner of the servient estate has no right to interfere or arrest the natural flow of surface water. Defendant by his farming method and other acts has interfered with the natural flow of surface waters.

"3. Plaintiff had no right to enter on defendant's land and dig the ditches which defendant has filled and barricaded, but no damages were sought by defendant and other than this comment no consideration is given to this illegal trespass. Filling the ditches and barricading these ditches by defendant are only cumulative acts to the real cause herein, to-wit: Farming in such a manner as to raise the normal elevation at the fence line sufficient to stop the natural flow of surface water.

"4. The defense that plaintiff has an adequate remedy at law under the provisions of Chapter 465, Code of Iowa, 1962 is without merit. Plaintiff is not seeking a new outlet to properly drain his land but is only asking for the natural flow of surface water from his estate out over defendant's land, a right he has always had by nature, and the enjoining of defendant from interfering with this right that nature built. Defendant assumes that by his acts he can alter the natural flow of surface water and thereafter compel plaintiff to cope with the new elevation lines by reason of his acts. Plaintiff had a right and defendant cannot take it away from him. It might be added that building a partition fence does not include an agreement to increase the elevation line at this point and a waiver of right to the natural flow of surface water from the dominant estate out over the servient estate.

"5. Plaintiff's prayer asks that defendant be enjoined from interfering with the natural flow and drainage of surface water onto defendant's land and for other equitable relief. Plaintiff is entitled to an injunction enjoining defendant from interfering

with the natural flow of surface water from plaintiff's land out onto defendant's land. Further a mandatory injunction should issue directing both plaintiff and defendant to restore the elevation lines on each's land as it existed prior to the erection of the partition fence; and in a manner that surface water from plaintiff's land will flow and seep across said partition fence line. An injunction should issue accordingly."

On the same day the trial court entered an order for injunctions consistent with the conclusions stated in paragraph 5 above. The parties were given 30 days to comply.

We are given no other record of the trial and therefore must take the facts as found by the trial court.

Almost immediately after the judgment the parties filed various applications and pleadings. Plaintiff on June 26, 1964, filed an application for instructions and stated his desire to comply fully with the orders of the court. July 29, 1964, plaintiff filed an application asking that defendant be held in contempt. October 2, 1964, defendant filed a motion to dismiss the contempt proceedings and an application for instructions. He asked the court to give sufficient instructions so that the injunction could be complied with.

On May 18, 1965, the trial court entered these additional findings and conclusions:

"The Court has by investigation and counsel with engineers ascertained a feasible way to restore the level of the ground as it existed prior to the erection of the partition fence which is as follows:

"Starting at the corner post at the northeast corner of defendant's real estate and the southeast corner of the plaintiff's land, the parties should ascertain the point on the fence line 165 feet west from said corner post, and commencing from this point and for a distance of 570 feet west the partition fence shall be removed by them and the area 30 feet on each side of the fence line shall be disked until the land is returned to its natural state, with the land level at the fence line to be as nearly level on each side as is practical.

"It is therefore ordered that the parties may carry out the original decree entered herein on the 19th day of June, 1964:

1042

"1. Ascertain the point along the fence line separating the lands owned by the parties 165 feet west of the corner post at the northeast corner of defendant's land and the southeast corner of the plaintiff's land; remove the fence from the point 165 feet west of the said corner post for a distance of 570 feet; and thereafter each party shall disk his land back to its natural state and as nearly level on each side for a space of 30 feet north of the fence line and a space 30 feet south of said fence line until said land on both sides of the fence is as nearly level as it is practical to make it.

"It is the further order of this court that the injunction issued to the plaintiff by the Clerk of this Court on June 20, 1964, and the injunction issued to Homer DeWitt by the Clerk of the District Court on June 20, 1964, be and they are hereby withdrawn; and any contempt proceedings instituted under the original decree is overruled and defendant held not to be in contempt prior to the entry of this Instruction Order.

"It is the further order of court that a new injunction issue from the Clerk's office incorporating the terms of the original order (June 19, 1964) plus paragraph and point one of this order of instructions.

"It is further ordered that the parties shall have until July 15, 1965, to comply with the original order following the instructions of the within order."

The record does not disclose the evidence taken prior to these findings and order but apparently they were based primarily on topographical maps of the area prepared by Garden Engineering Service of Oskaloosa. The maps have been certified to us as plaintiff's exhibit 1 and defendant's exhibit 1. Another such map appears in the court file and is set out at page 31 of the record. The latter clearly shows the various elevations in the area involved and that almost midway of the 570 feet referred to by the trial court there is a swale or natural depression running north to south across the fence line at approximately right angles.

On August 10, 1965, the trial court ordered plaintiff and defendant to file reports of what each had done to comply with the court's orders.

Plaintiff filed his report August 18, 1965, stating he had voluntarily removed the fence which the record shows was his, and set out in detail his work, including disking, use of a road maintainer, and the leveling of his land as directed by the court.

Defendant filed his report August 19, 1965, stating he disked the area as ordered by the court but not entirely up to the fence line as he was prevented from doing so by stumps. Obviously he had not removed the obstruction along his side of the fence line.

The trial court then conducted a hearing in a further attempt to resolve the controversy between the parties. At this hearing plaintiff and other witnesses testified plaintiff had brought his land to the level as directed by the court but defendant had failed to comply. They described a ridge of dirt 3 to 4 feet wide and 5 inches high on defendant's side of the fence line. They testified defendant had disked but not up to the fence line. Defendant did not deny existence of this ridge but testified he had disked as close to the fence line as he was able.

The trial court, after observing he had been patient in an effort to get the controversy between the two brothers settled amicably, announced he would ask the sheriff to inspect the premises and report to the court. Both parties by their attorneys agreed to this procedure and to accompany the sheriff.

On December 20, 1965, the sheriff filed his report stating: "Walter DeWitt has leveled down his side of the fence row. Homer DeWitt's side of the fence row is not leveled down."

The trial court, after making additional findings of fact, on December 22, 1965, made this order:

"It is the order of the court that the terms and provisions of the order entered herein on June 19 and 20, 1964, and May 16, 1965, be and they are hereby incorporated herein by reference and the same as if fully set out herein.

"It is the further order of this court that the defendant, Homer DeWitt, is hereby directed to level out and back his land to the elevation lines that existed prior to the erection of said partition fence with the land level at the fence line, and to be as nearly level on each side as is practical; and in so doing he

shall use such machinery as shall be necessary to accomplish said result, including the use of a grader or other suitable machinery, whichever the defendant elects to use.

"It is the further order of the court that the terms of the orders referred to herein and in this order be incorporated into a new injunction to be issued and served upon the defendant."

Defendant on this appeal, which he took January 19, 1966, states two general questions are presented: "First, was there an adequate remedy at law available to appellee? Second, did the court's finding of fact and injunctive order adequately resolve the dispute as to what was the natural elevation of the land at the fence line?"

I. Without considering the timeliness or perhaps waiver of defendant's first proposition we find it is untenable. As found by the trial court, plaintiff is seeking only to have the natural flow of surface water from his farm over defendant's land. The provisions of chapter 465 which provide a drainage ditch may be established when two or more landowners so desire have no application here. Plaintiff seeks only to enforce drainage rights which nature built. His proper action for such relief is for an injunction. Dodd v. Blezek, 245 Iowa 1112, 66 N.W. 2d 104. See also rule 320, Rules of Civil Procedure.

II. It is difficult to believe defendant's second contention is made in good faith. He produced at least one of the topographical maps at an earlier hearing and on the last introduced, as part of the court file, the map which now appears on page 31 of the record. It shows the elevations over a wide area including each side of the fence line. Plaintiff, several disinterested witnesses and the sheriff had no difficulty determining the proper elevations. Defendant had no difficulty determining the levels south of the fence line and stated he brought them to proper levels by disking. Only a ridge remains on defendant's side of the fence line. He needs no further determination of what he is expected to do under the trial court's last order.

The trial court has been more patient with defendant than he deserved or apparently appreciated. The judgment and de-

cree of the trial court is affirmed. It should be enforced without further delay.—Affirmed.

All JUSTICES concur except THORNTON, J., not sitting, and STUART, J., who takes no part.